We're here today because retired Ozark County Sheriff Darrin Reed and Ozark County Deputy Sheriff Jeffrey Lane are entitled to qualified immunity from the claims of Tracy Presson in this matter for failure to provide adequate medical care. But most importantly, they're entitled to judgment outright. And it was error of the law to do that. We're here for the district court not to grant that because the material facts show not just an issue of some sort of dispute of fact, but the material facts show that Mr. Presson's rights were never violated in their care at the Ozark County Jail. I know that my opposing counsel is going to split time into two issues, one being jurisdiction and the other being the regular rest of the case. is a serious medical circumstance that can support this type of claim? The terminology used by this court is may, and it depends on the facts and circumstances of each individual case. And here, the material facts go first to the matter of qualified immunity because of the nature of the decision not to provide certain medication to Mr. Presson, even though they were prescribed. And two, the fact is that it goes to the other intertwined issue, which is the matter of the nature of the decision. It sounds like you're describing things that need to be factually dealt with. They are. They're set. Those material facts are not in material dispute. The complaint, the verified complaint, which is taken as proof at summary judgment, how do you get around the allegations in the verified complaint? I would say that still the court's consideration of the mere allegations of the plaintiff is not sufficient. There needs to be additional facts there. And even those verified facts are inconsistent with each other. And don't state all the facts because they're clearly, well, they're inconsistent. And then his interrogatory responses and in addition to the other facts that we adduced. Well, why wouldn't they be material then? These are disputed facts. Why wouldn't it be material and perfectly appropriate for denial of summary judgment? I'm sorry. Because any plaintiff could just file a verified petition and defeat summary judgment at any level. And that's clearly not the law. Well, it's close to the law, isn't it? Not when the material facts and the facts that are not in dispute establish that there was no, even with the dispute of fact, the material facts that are not in dispute establish that there was no constitutional violation. What are those? One is that the provision of over-the-counter, the availability of over-the-counter medication specifically for pain. And in this case, it's undisputed, there was antacid medication provided. There's a dispute that he did not, it's inconsistent in the pleadings and his statements in the medical records, that he did not receive his Omeprazole, which is for heartburn medication. But we know that he was provided with medication at regularly given intervals because he was cheeking his Ambien. And he was hoarding his Ambien to commit suicide at a later date. It's undisputed, though, that the Ambien, at least from the verified complaint, that the Ambien was given not as prescribed and more than once per day. The record as to when it was given is not altogether clear. But we know he was giving it. And we know that he wasn't taking it because he wasn't, even if it was prescribed, or was given more or less than what was prescribed, he wasn't taking it. Well, let me ask you this. What is the over-the-counter equivalent of Adderall? I don't, I know of no equivalent to that. So at the very least, not giving him attention deficit medicine was, there was no replacement, no substitute for it. It was believed at that point to be a controlled substance by the sheriff. And again, that goes into the qualified immunity analysis, which mere negligence or gross negligence does not obviate qualified immunity. Violation of a written policy of the jail also doesn't obviate, it doesn't constitute a per se violation of constitutional right. It also doesn't obviate qualified immunity. And that's, at best, is what we're dealing with here. We're at a small county jail that even in his sworn petition. But if controlling court precedent has concluded that a serious medical need is not being met when someone does not receive prescribed medication, that's enough to put the county on notice that a policy that they may have in contravention to that is not something they can maintain and have as a defense. I'll posit that the facts do not show a serious medical need, because the uncontroverted facts are that after he was dismissed or after he tried to commit suicide and was then transferred after his federal indictment to another, well actually three, or two, twice, one and then twice to the same facility, Greene County, he was never prescribed any medication other than Omeprazole, ever. Well, I acknowledge it's not a per se violation of a constitutional right, but our DAD case has this language. When an official denies a person treatment that has been ordered or medication that has been prescribed, constitutional liability may follow. Well, just to add to that, DAD did involve a controlled substance. It's Vicodin. I mean, it's even a potentially more dangerous controlled substance than Adderall. And I agree that the DAD case was a motion to dismiss, not a summary judgment motion. And the DAD case, the injury, and the illness was absolutely obvious to everybody at the jail, because it dealt with he had just come from a major dental surgery and had bleeding and pussy gums and things of that nature, and there's additional facts that show a conscious disregard or criminal recklessness in regards to denying him care. Tracy Preston wasn't denied care. He was given his prescriptions pursuant to what the sheriff department or the sheriff, the department is, the county is not a party. They were, it's just Sheriff Reed and Deputy Lane. He was given his medications. He was given medical care. He was transferred twice for serious medical provision. I would, again, posit that the Omeprazole that he claims different times he was or was not given, I posit that the records show that he was. Well, didn't the doctor at the clinic come back and tell these officials that, hey, we need to restart that medicine? He did reissue a, he did renew the prescription for Omeprazole. But doesn't that. I'm sorry. Doesn't that indicate, though, that it wasn't being given? I think, I agree that the record is being undisputed that at least for the 17 days prior to seeing the doctor in the clinic that it was not being given. Now, they may have been receiving antacid, and that's fine. You can argue that. But I'm just, I'm trying to figure out what the record says. Well, I, the records indicate that he was given medications at regularly scheduled intervals. Antacids or Omeprazole. Omeprazole. And we know that he was, I mean, logically, why give him the Ambien and not give him the Omeprazole? It's just, that's a logical conclusion there. Because when he gets to the hospital and he complains, the only thing he complains to the hospital about is chest pains, which was checked out. He complains, if the record is to be taken, he says, I haven't had Omeprazole. I haven't been giving him Omeprazole for 17 days. Well, that precedes his entry into the jail. So either he's telling the truth and he's wrong, or he is not a good storyteller, or he is not an accurate historian of the facts. It's credibility. It's a credibility case. Good arguments for a jury. But I think at this point, the judge in this court can make a credibility determination based on the facts and circumstances. Isn't it a fair inference from not getting his Omeprazole and being told by the clinic, the doctor, that you need to restart that? Isn't it a fair inference that what he was complaining of was caused by the fact that he hadn't received his Omeprazole for 17 days? Again, that would precede his entry into the jail, which doesn't make sense. It doesn't make logical sense. If he is a good, if he takes his medication, if he takes everything, you know, as prescribed, he would have been out of all the other medication within a week of his entry. How long before he went to the clinic was he in the jail, like when he entered in jail? He was arrested the night of October 2. Okay, so how many days then until he saw the clinic, the clinician, the doctor? He complained of chest pain October 17 and was taken to, by Jeff Lane, was taken to the hospital to be checked out, which was, he was, there was no problem. And I might add, if he's making these, the only drug that he complains about, he doesn't, there's no evidence, there's no fact, there's no dispute, he doesn't complain about any, and I need to reserve my time, he doesn't make a complaint about any other medication but Omeprazole. And that's the only one, and for some reason, the prescription is renewed, or he gets another prescription, it's renewed. Global, I would say, well, first of all, the provision of over-the-counter medications is undisputed. There is no dispute, that's a material fact. It obviates a constitutional violation from Omeprazole and whatever pain medication he claims that he was entitled to. And then that also obviates, in this Court's jurisprudence, punitive damages. It shows that it's not a conscious disregard, it's not a criminal recklessness, which is the standard for deliberate indifference to medical need. It has to be criminal recklessness, not negligence, not gross negligence, not a good faith mistake. It's got to be criminal recklessness. And then in the past, after he gets out of jail, I'll posit that there was no serious medical issue because he's never been treated for it since. And there's no doctor, no expert, no nothing that says it made a hill of beans difference to his prognosis and his health, which is also the standard. You're using up your time. I'm sorry. Again, I think you're making excellent arguments for closing. But we're here to look at some very specific legal questions. I understand. Thank you. I'll be back. Mr. Dackel? Yes. May it please the Court. I'm just going to briefly discuss the jurisdictional issues in this case. So we contest that there's jurisdiction for this Court to hear this claim at all, this appeal. If you heard from my friend, Mr. Heigley, essentially he is arguing a dispute with the facts. And he continues to say there are undisputed material facts here. We vehemently disagree. What you didn't hear him argue with was any legal matter here. And I think Judge Strauss said it correctly, that there's the dad case that says failure to administer a prescribed medication can constitute a constitutional violation and can overcome qualified immunity. Now, the rest of the argument is a dispute with the facts, and it does not suffice to have a dispute with the facts at the summary judgment stage to obtain interlocutory appellate jurisdiction. Now, dad had some broad language that the Chief read. But dad was a little different because the inmate there was obviously in severe pain. He had, you know, mouth issues and stuff like that. And maybe we can make the same argument here. But that starts to reflect what the whole Eighth Amendment is about, which is you're punishing somebody who you've taken. And I don't know that you can make the same argument quite as strongly here, that the types of medicines that were being withheld were analogous to punishing somebody. That may be the case, but that does not suffice to create interlocutory jurisdiction. The legal holding of dad is what could be addressed here within the jurisdiction of this Court. But the facts, and my colleague, Mr. Salazar, will address them in more detail. He was suffering. He was throwing up bile for hours on the floor. And when he was taken to the hospital, the doctor took a look and said, you need to get him back on his Omezeprol. The fact is Sheriff Lane and Deputy Reed are not medical professionals. Some of the other cases that are cited by the defendants in this case show that when it's a medical professional using their judgment and there's a delay in treatment, there could be some other factual inquiries that matter. But a nonmedical personnel at a jail cannot substitute their discretion for valid medical prescriptions. And there's no challenge that they are valid medical prescriptions for medical professionals. And so that fact, the fact that the defendants are not challenging the law here, is insufficient to create interlocutory public jurisdiction. And you don't think, I mean, your response was, well, you know, that's factual. But I actually disagree with you. I think that whether or not dad applies on its own terms isn't legal, because we have to determine whether it violates a clearly established right. And you may disagree that dad is distinguishable. That's fine. But I think that's a purely legal question that we can fairly deal with here. Fair enough. You know, our position is that the failure to administer prescription medication by a lay jailer is, that is a clear constitutional violation. And then one other point I would make is the KWP v. Kansas City Public School case. It states very clearly, when you're challenging qualified immunity, a denial in an interlocutory fashion, you have to be prepared to concede the facts that are not favorable to you. And there is just... That's the defendants must be prepared to concede. Yes. And there's just a complete absence of that here. The facts viewed in light most favorable to our client clearly establish that he was not provided his medication. It resulted in serious medical issues. And then there was a doctor who took a look at it and said, you need to put him back on his medication. And briefly, I'll discuss pendant jurisdiction. Before you go there, is there any dispute that he got over-the-counter medication for at least some of them, like the acid reflux and the pain he got Tylenol or aspirin or whatever? There is a factual dispute there. Okay. But at the end of the day, again, this is a lay jail person substituting what he thinks is a way to... I get that. No, I just wanted to figure out if that was truly undisputed as opposed to... Yes, that's also disputed. Is it disputed how many Ambien he had been administered over the period of time he was at the jail? It's disputed that it was administered properly. I don't know that there's a dispute on the specific quantity, but the prescription, the specifics of how it was... As long as it was prescribed, he should have gotten one a day. Yes, correct. And then there's the allegation that he took up to 30 or 29 or 30 in a suicide attempt. Correct. Had he been in jail long enough to receive 30 pills? So, yes, the attempt was much later. The attempt, I believe, was 44 days after he went in jail versus the Omezeprol incident was 17 days. So he was not given Omezeprol for 17 days, ended up in the hospital, came back approximately 25, 28 days later. There is the allegation that he attempted to commit suicide. But I will pass my time to my colleague to discuss more of the merits. Thank you, Your Honors. Mr. Salazar. May it please the Court. The first question this Court asked of counsel today was whether it's factually accurate to say that prescription drugs were not administered. And that is absolutely the case, and that's why we're here today. That is an example of a case that does support this type of claim. And we'd argue that the circumstances in Dad are present here and, in fact, may be even more extreme. Not only was Mr. Pressen denied his Omeprazole, which caused him severe pain, throwing up bile, and ultimately resulted in a doctor ordering him to be restarted on Omeprazole, but Mr. Pressen was also denied his prescription for Adderall and his prescription for cyclobenzaprine, which in many ways is analogous to Dad because it's a medication used to treat acute pain. Mr. Pressen was suffering this pain after experiencing a back injury. The other points I would add are that Dad involved a situation in which medical professionals were involved. Here there's no medical professional saying these medications can be withheld. Dad also involved a more compressed timeframe. Here we're talking about Mr. Pressen being denied medication for a period longer than 45 days, after he was repeatedly requesting the medication, and after his family members made the medication available to jail staff. There are several facts that are in dispute, including whether or not the over-the-counter medication was made available in equivalent medications to those that were prescribed. For example, I don't think there's any evidence in the record suggesting that Mr. Pressen was provided an over-the-counter equivalent for something like Adderall, a medication he was prescribed, that his doctors described as being used to treat a psychiatric illness. There's controlling precedent that says a serious medical need. The second issue I want to address is the issue of whether they were on notice that they needed to provide these medications. And I think Judge Smith, you pointed out that there's case law in this circuit indicating that the medications must be prescribed, and that would be enough to put the jail staff on notice in and of itself. But the jail also had a policy that prescription medications were to be administered as legally prescribed. I guess that's interesting because I hear the other side saying there was kind of a policy that they shouldn't give certain medications. Is that part of what's in dispute here? Yes, absolutely. We have, you know, a written policy that's in the record, and then we have essentially, you know, assertions on the papers that there's a different policy in effect. The policy that's in the record is reflective of what the law states, which we argue suggests there was subjective notice that they needed to provide the medications as prescribed. I wanted to briefly discuss, you know, the record evidence about whether just one of the medications Mr. Preston was prescribed was actually given at regular intervals. The medical medication log is fairly vague on this point, indicating that it should be put to a fact finder. For example, the jail records don't articulate what specific medications were given to Mr. Preston. They just say meds and indicate the time. You know, we would suggest that that indicates a jury could find Mr. Preston's view of the facts and what happened and give credit to him, especially when there appears to be admissions that the prison officials were outright refusing to give Mr. Preston all of his medications as they were prescribed. This is a county jail, right? Yes. I thought you said prison. I worried about that for a second. Go ahead. Excuse me. Yes, this is a county jail. Right. Yes, that's right. In regards to the level of intent that needs to be present for there to be deliberate indifference to serious medical needs, one of the cases that the district court cited in denying summary judgment was Hudson v. McMillan, and in that case, you know, the court pointed out that there is a less stringent standard when it comes to medical care because the needs of the prison don't really compete with providing an inmate with the medical care that he's due. And we'd argue that this case and the rationale behind it support a position because there's nothing that suggests providing Mr. Preston with the medications he was prescribed would interfere with the course of the jail's regular course of duties. And if there are no further questions. You do agree that there could be some limits there. For example, in a state allowing medical marijuana, for example, they may say even if you have a prescription or a card, the jail can reasonably say, no, we're not going to allow you to do prescription marijuana in jail. I certainly think that's a reasonable limit, absolutely, especially considering that marijuana remains a federal narcotic. I believe it's a drug classified as having no medical use, and you contrast that with this case. We have drugs involved that have obvious medical uses. They're widely prescribed. This court has recognized that pain medication, for example, is one such drug that, you know, an inmate is entitled to. This court has also recognized, for example, that psychiatric drugs are drugs that inmates are entitled to. You know, I'm not aware of any case law suggesting that medical marijuana is something that is akin to that. Well, I gave you an extreme example, but I wonder if one of two possibilities is present in terms of looking at Dad. One is, is Dad used the word may, and it was recognizing the fact that certain drugs may not be able to be administered in prison. Like, if you need an infusion and then need to be, you know, watch for some period thereafter. Or whether or not Dad might be too broad. Because I'm sure there are some drugs that have such severe side effects that you may not be able to safely administer them in jail or prison. Well, Your Honor, the way— I'm not saying that these drugs are bad. I'm just trying to figure out the limits of the rule. I'm sorry I interrupted you. No, no, of course. And, you know, the way we read Dad is that, you know, these are very fact-intensive inquiries, obviously. And, you know, constitutional liability may follow in certain instances where medication hasn't been prescribed or hasn't been given as prescribed. And, you know, the fact-intensive nature of that inquiry is the reason why this shouldn't be on an interlocutory appeal, shouldn't be decided on an interlocutory appeal, and should return to the district court so that a fact-finder may adjudicate whether there was deliberate indifference because there was refusal to provide medication that was legally prescribed. Thank you. Thank you, Mr. Salazar. Mr. Heigl, your rebuttal. Can you please report?  First of all, in regards to the jurisdictional issue and the interlocutory appeal, the nature of this appeal, this court has said in Watson v. Boyd of 2F4-1106, the legal question of whether the district court has made a thorough determination of a law enforcement's claim of qualified immunity is a matter of law. And also a matter of law that can be or that should be determined at its early stage in an interlocutory appeal. Qualified immunity is very important. It's cherished by this court. It's cherished by the Supreme Court. And it's there for a reason because these individuals, these public servants with imperfect knowledge and imperfect resources are paid little by the public and they have much responsibility. And that's why qualified immunity is in place. And that's why Sheriff Reed and Deputy Lane are entitled to qualified immunity. Going to Dad case that we've talked about. The Dad case, again, was a medically serious issue. It was on a motion to dismiss. But the cases that Dad cites, Foulkes, Majors, Phillips, Johnson, Crooks, and Cummings all have things that are so apparent, things that are so medically dangerous or medically important to the lay person that that's why the qualified immunity was questioned. Could I ask one additional question, Chief? Sure. So I think one of the things you're relying on is the obviousness in Dad. But I can give an equal hypothetical, I think, that would raise serious constitutional concerns. Suppose somebody had a very serious heart condition, bad aorta, whatever, and not receiving their medication, atrial fibrillation, not receiving their medication could kill them. Not obvious would then it be not raise a constitutional problem if they say, well, we're just not going to give him his heart medication. If they knew about it and they knew about atrial fibrillation and they knew, well, everybody knows that it's a dangerous heart condition, he was treated for chest pains immediately in the jail. He was taken to the doctors and checked out. And that's when the only thing he complains about is omeprazole, which he gives inconsistent statements about the omeprazole. He doesn't complain about any other drugs that he claims he is denied. But then going further, I would say his dangerous, obvious to a layperson, those medical emergencies were taken care of. In addition to the time that he ingested the 20 to 30 pills that he had checked and tried to commit suicide, he was immediately taken to the doctor. They didn't let him lie on the floor. They didn't point and laugh at him. They weren't criminally reckless in that regard. They immediately got him to the hospital. But I guess what I'm getting at is that we can't have a rule that says that I haven't given somebody their heart medication for 17 days and then, oh, yeah, by the way, I took them to the hospital after they had a heart attack. That doesn't work. And so what I'm getting at is I think what you're asking us to do, and I just want to nail this down, is you're saying if it's not a serious medical condition, then it's okay not to give the medication. If it's really serious in the view of these jailers, then they should be giving the medication. Because you said, essentially, the heart attack, you know, you should be giving your medication. If he came in with heart medication to treat a known heart condition and they denied that, I would agree. They didn't do that here. And he did not have known condition. He was checked out. His cardiac situation was fine when he left the hospital after one day, after getting checked out. I'll posit that, well, again, over-the-counter medication that was provided or available, that's not in dispute. That's not a disputed fact. Nobody's disputed that fact. That's probably the most undisputed fact in this case, is that over-the-counter medication was available whenever he wanted. That means antacids and pain medication for whatever back ailment that he claims he would have. Any sort of, and it's in the record, any sort of medication for the cyclobenzaprine, which the record is iffy whether he actually, we honestly, the record is iffy because we don't know for sure whether some medications were brought up to the jail by his brother. His brother never testified. Brother's not in this case. But we do know that he was given Omeprazole at time, and we also know that he was given Ambien at time because he OD'd on it. And so he was being given his medication. He wasn't being forced to sit in a cell and receive no treatment. Well, the allegation with the Ambien is that not only was it concerned about how much he received, but the way it was administered, that that's the question that's up for litigation is did he receive it much more often than was required or not, just the frequency. I don't think that's material if he doesn't take it. I mean, it's not, he's not misadministering it or he's not being forced-fed this medication. He's cheeking it, saving up to either sell or to do what? Or to commit suicide because he was indicted by the Fed for sex crimes against his stepdaughter. So, I mean, that also enters into the equation. The fact is there's no dispute. He received medication. He didn't take it as given. He had tried to OD when he was indicted by the Fed, and he was immediately taken to the hospital. Thank you, Mr. Heigl. Thank you, Your Honors.